TOBIAS KESLER *v.* ISAAC S. LINKER.

*Surety and Principal—Exoneration—Subrogation.*

1. If there be an agreement between a creditor and surety, at the time a mortgage is taken (here of perishable property) to secure the debt of the principal, that the creditor is to "look after" the security, the creditor is bound to active diligence; and if loss is occasioned by his laches, the surety is exonerated to the extent of the value of the mortgaged property.

2. But in the absence of such agreement, his quiescence will not discharge the surety; nor is he required to resort in the first instance to the property conveyed, but may proceed against the surety who is subrogated to the rights of the creditor upon payment of the debt.

3. Or, after the debt becomes due and before the surety pays it, he may compel the creditor to proceed against the principal upon indemnifying him against loss from the suit.

*(Pipkin* v. *Bond,* 5 Ired. Eq., 91, cited and approved.)

CIVIL ACTION tried at Fall Term, 1879, of ROWAN Superior Court, before *Gilmer, J.*

The action was commenced before a justice of the peace

upon a note executed by one C. A. Lowder and the defend-
ant as his surety, and carried after judgment by appeal to
the superior court.   The defendant amongst other defences
set up, alleged, in his answer, that at the time he signed the
note the plaintiff took a mortgage from said Lowder, the
principal in said note, amply sufficient to pay off and dis-
charge the note, and the plaintiff being the mortgagee by
ordinary diligence could have made the debt and failed to
do so by his laches; and it was agreed that plaintiff should
make said debt, that the mortgage was on perishable prop-
erty, and the plaintiff made no effort to get the money.

The plaintiff in his replication denies that there was any
agreement between him and the defendant to take the mort-
gage; that defendant, Linker, drew the mortgage and that
plaintiff knew nothing of it, but it was made for the protec-
tion of Linker, as surety.

The mortgage was offered in evidence, and the plaintiff
was the mortgagee named therein, and was made payable
the day it was executed, and conveyed the growing crops
of wheat, corn, oats and tobacco of the said Lowder.   There
was evidence tending to show that the property conveyed
was amply sufficient to pay the debt, but the plaintiff never
used any effort to take it into his possession or sell any of
the property conveyed to secure the debt, and that the mort-
gagor was permitted to hold and apply to his own use all
the property, except a portion of the tobacco crop which was
paid the plaintiff.   The defendant testified that at the time
he signed the note, he wrote the mortgage at the plaintiff's
request, and before signing the same he asked plaintiff who
would take the mortgage, to which plaintiff replied, " I will
of course; I will attend to that."

The defendant asked the court to charge the jury, that if
they believed Tobias Kesler, at the time he received the
note of defendant as surety for C. A. Lowder, took a mort-
gage on the perishable property of said Lowder, amply suf-

ficieut to pay off said note, and plaintiff by laches failed to make the money out of said mortgage, then the defendant is discharged by reason of said negligence.

The court declined to give such instruction, but charged the jury that it was the duty of defendant, Linker, to see that the property mortgaged should be sold to satisfy the said mortgage, and as there was no evidence that defendant, Linker, ever tried to have said property sold, that plaintiff was entitled to recover. The defendant excepted to the charge and there was a verdict and judgment for the plaintiff, from which the defendant appealed.

*Mr. J. S. Henderson,* for plaintiff.
*Messrs. J. M. McCorkle, Witherspoon* and *Bailey,* for defendant.

ASHE, J., after stating the case. The only question presented for our consideration is, was there error in the instructions given by His Honor to the jury. His Honor committed no error in refusing the instructions, but we do think there was error in the instructions which he did give.

Whether at the time of the execution of the note and the mortgage, (for they seem to have been simultaneous acts) there was an agreement between the plaintiff and the defendant, that the plaintiff would attend to the securing the property conveyed in the mortgage, was a question squarely raised by the pleadings. It was a material inquiry in the case and should have been submitted to the jury for their determination. The jury, it is true, found all issues in favor of the plaintiff, but the result of their finding might have been different if His Honor had charged them with that question. His Honor should have charged the jury, "that it was the duty of Linker to see that the property mortgaged should be sold to satisfy the mortgage, and as there was no evidence that he had ever tried to have

said property sold, that plaintiff was entitled to recover, unless there was an agreement or understanding between plaintiff and defendant at the time of taking the mortgage, that the plaintiff would look to securing the mortgaged property and apply it to the debt.

Without some agreement or understanding between the parties to that effect, the plaintiff is not required to resort, in the first instance, to the property conveyed in the mortgage, before proceeding against the surety; nor is there any positive duty incumbent on the creditor to prosecute measures of active diligence. *Froener* v. *Yingline*, 37 Md. Rep., 491; Brandt on Part., &c., § 204.

The surety is the guarantor, and it is his business to see that the principal pays the debt, and when there is a collateral security taken by the creditor from the principal debtor, it is his duty to see it is made available. The creditor can do no act with reference to the security which will prejudice the surety, but his quiescence will not discharge the surety, for he is not bound to active diligence. *Pipkin* v. *Bond*, 5 Ired. Eq., 91.

The remedy of the surety is to pay the debt, and he will then be subrogated to, and may enforce all the liens held by the creditor for the payment of the debt. Brandt on Part., &c., § 204. And it has been held in England and in some of the American states, that a surety may by a suit in chancery, after the debt becomes due and before he pays it, compel the creditor to proceed to collect the debt from the principal, provided he indemnify the creditor against loss, from a fruitless suit against the principal. *Id.*, § 205, and the cases there referred to in note.

Such is the law applicable to the case when there is no agreement or understanding between the creditor and the surety. When there is such an agreement or understanding, the creditor is bound to active diligence, and if by his neg-

lect the property is lost, or destroyed, or surrendered, the surety will be exonerated to the extent of the value of the property conveyed in the mortgage or other security, which might be secured by proper diligence; and the reason is, because by the understanding or agreement to look after the mortgage and see that the property conveyed therein shall be applied to the debt, it put to sleep the vigilance of the surety and produces a false confidence, but for which he might have taken security for his own indemnification. There is error. Let this be certified to the superior court of Rowan.

Error.                                                      Reversed.